PETITIONER'S EXHIBIT A
****************************

```
 1  stage.  This is jury deliberation.
 2          THE COURT:  I don't know if it's critical or not.  I
 3  think it's fair.  I just want to try to be fair.  But sheriff,
 4  there's no need for any of the public to be in here while this
 5  is going on.  All right.  So we will keep the public out, and
 6  let's get the defendant and let him sit here.
 7          MR. JIMMERSON:  Your Honor, we might have to take --
 8  right after the playing of the tape, at least the video, or we
 9  start into the tape, we need to take a quick break to cue up
10  section eight.
11          MR. MANTOVANI:  What I propose is we may --
12          THE COURT:  Doesn't mean a thing.
13          MR. JIMMERSON:  Just to step aside so we can cue up
14  the portion.
15          THE COURT:  Where do you want to do that; over here
16  in the back?
17          MR. MANTOVANI:  I think that would be the safest.
18          THE COURT:  All right.  Just do it in the robing
19  room of the Eighth Circuit Court of Appeals Emeritus.
20          MR. MANTOVANI:  Yes, sir.  Could we dim the lights
21  so the video may be viewed?  Thank you, sir.
22          (The defendant now in the courtroom at 12:31 p.m.)
23          THE DEPUTY SHERIFF:  They are requesting a few more
24  minutes before they come out, Judge.
25          THE COURT:  All right.  J.
```

```
                    PETITIONER'S EXHIBIT B
                 **************************
```

```
 1   12:25 a.m., in the State of Missouri, at or near the 5000
 2   block of Page Boulevard, the defendant or other persons caused
 3   the death of Marshal Burgess by shooting him.
 4          Well, ladies and gentlemen, that is what we are here
 5   to discuss. Okay. Who did this crime? Well, you know who
 6   did this crime. The defendant did this crime. I want you to
 7   go down here. This one has to do with, well, you shoot
 8   somebody in the face, you are pretty sure they are going to
 9   die. So that's uncontroverted. The only part that's
10   controverted by this is the defendant.
11          The third part, this is what I want to talk about,
12   that the defendant or other persons did so after deliberation,
13   which means cool reflection upon the matter for any length of
14   time no matter how brief.
15          Now remember the evidence. We know that the person
16   that put three bullets in Marshall's brain is the same person,
17   the defendant, that shot the .45 caliber weapon over the roof
18   of the car that you see on the video.
19          MR. JIMMERSON: Let me object. He's personally --
20   he is saying what we know, invading the province of the jury.
21   He can argue it, but --
22          THE COURT: It's argument. Overruled.
23          MR. MANTOVANI: The evidence will show, and the
24   evidence has shown that that .45 caliber that was used by the
25   defendant to shoot over the roof at Marshall's body is exactly
```

```
 1   the same gun that was used to put the .45 caliber slug into
 2   Marshall's face, into his face.  The shell casings were on the
 3   body, are an exact match to the shell casings that were found
 4   in the street where Lionel Bailey saw the defendant firing
 5   that semi-automatic .45 caliber weapon.
 6           Ladies and gentlemen, that is -- that is
 7   deliberation, to put three rounds into someone's face from
 8   point blank range, then to walk back to a car and fire more
 9   shots.
10           MR. JIMMERSON:  Objection, not in evidence Your
11   Honor.
12           THE COURT:  Sustained.  Proceed.
13           MR. MANTOVANI:  The defendant fired those shots over
14   the top of the hood of that car.  We know that that matches
15   the .45 caliber shell casings around the body.  So we now that
16   the person that used the .45 caliber over the roof of the car,
17   the defendant, used that same gun to put three .45 caliber
18   slugs into the victim's face.
19           Let's not forget what Dr. Graham told you how close
20   he is.  The defendant -- the barrel, the muzzle of that
21   firearm was a foot away from Marshall's nose, a foot a way.
22   (Indicating).  Murder in the first degree.
23           Now, ladies and gentlemen, if you read down, what
24   this part is about is that the defendant, Kenneth Sills, aided
25   or encouraged the person or persons in committing the murder
```

```
 1  said:  Yeah, that's the guy that killed him.  Close enough.
 2  Then the coincidence then Lionel Bailey said the same thing.
 3  Yeah, that's the guy.  That's the guy I saw firing the weapon.
 4         To believe -- let me say this.  You are required to
 5  use your common sense.  It is in the instruction.  You have to
 6  apply your common sense.  That's what jurors do, apply their
 7  common sense.  What makes more sense here; that the defendant
 8  did exactly what we say he did?  Tamika Willingham told you he
 9  was on the front yard with a gun.  The same man, the
10  defendant, is seen firing that gun at the body of the victim.
11         Now, Mr. Jimmerson didn't bring it up because he
12  can't.  He forgets the science here, the science.  Those .45
13  caliber shell casings in the street, they are an exact match
14  to the .45 caliber casings in the body.  He says no one saw
15  him walk up and shoot.  He is correct.  Well, a bunch of
16  people did, but they never came forward.
17         MR. JIMMERSON:  Objection, Your Honor, to that.
18  It's not in evidence.  It's not in evidence.
19         THE COURT:  Sustained as to that particular phrase.
20  Proceed.
21         MR. MANTOVANI:  Yes, sir.
22         The video shows people driving by.  Okay.  I think I
23  am allowed the inference of the assumption that they may have
24  seen something.
25         MR. JIMMERSON:  Same objection, Your Honor.
```

1  knocking on the door. Listen closely. She didn't say
2  anything about the kicking. That's a dispatcher's word.
3        Let's look at the identification. Mr. Bailey,
4  Mr. Jimmerson is trying to hold Mr. Bailey to that same
5  standard he just witnessed somebody fire a weapon. He is in
6  his car. He is trying to track them down. Okay. He's seeing
7  the whole thing. The only thing he's got against him is this
8  white shirt. All right. We have the police report, audio
9  taped statement given by Lionel Bailey, pages of testimony,
10 and that's the only thing he's got on him. White shirt. In a
11 911 tape just after he saw someone fire, and just after he saw
12 a dead body in a white T-shirt laying on the ground. Any
13 other inconsistencies, you would have heard of them. That's
14 it.
15       Now, Miss Willingham, yes, she didn't say -- she was
16 terrified. Still is terrified. All right. She had to come
17 in here and tell you who she saw. It is a person she knows.
18 All right. She didn't want to do that. One of the points
19 that they tried to make throughout the trial is she did not
20 tell the defendant's girl friend, Erica Jones, that the
21 defendant was involved in this. Seriously? She's supposed to
22 go to the defendant's girl friend and say, oh, yeah. Yeah,
23 Erica, I saw. They jumped all over me when I tried to call
24 him her boy friend, the person that she was in a relationship
25 with, that they had sex that night supposedly. I am using the